**Case No. 23-30565**

(On appeal from Case No. 2:22-cv-04552 in the United States District Court for the Eastern District of Louisiana)

---

## *United States Court of Appeals for the Fifth Circuit*

---

*In re: Roman Catholic Church of the Archdiocese of New Orleans*

ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS, *Appellant*

v.

MINOR CHILDREN, *Appellees*

───────♦───────

On appeal from *In re: Roman Catholic Church of the Archdiocese of New Orleans*, No. 2:22-cv-04552 in the U.S. District Court for the Eastern District of Louisiana, On appeal from the U.S. Bankruptcy Court for the Eastern District of Louisiana *In re: Roman Catholic Church of the Archdiocese of New Orleans*, Case no. 20-10846

───────♦───────

# REPLY IN SUPPORT OF MOTION TO DISMISS AS FRIVOLOUS AND/OR SUMMARY AFFIRMANCE

───────

Chris Edmunds,
Chris Edmunds Law Office, LLC
LBSA: 37670
4937 Hearst St., Suite 2F
Metairie LA 70001
(504) 314-0034
chrisedmundslaw@gmail.com

# CERTIFICATE OF INTERESTED PERSONS

I. In the Matter of Roman Catholic Church of the Archdiocese of New Orleans, Debtor Minor Children, Plaintiff - Appellee v. Roman Catholic Church of the Archdiocese of New Orleans, Defendant - Appellant.

II. The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. E.R. and her mother, B.R., Appellee

2. B.R., and his mother, L.R., and his father, A.R., Appellee

3. Christopher Edmunds, counsel for Appellees, Chris Edmunds Law Office

4. The Roman Catholic Church of the Archdiocese of New Orleans, Appellant

5. Counsel for Appellant:

    R. Patrick Vance
    Elizabeth J. Futrell
    Edward D. Wegmann
    Mark A. Mintz
    Laura F. Ashley
    Allison B. Kingsmill
    Samantha A. Oppenheim
    Caroline V. McCaffrey
    Swati Parashar
    Jones Walker LLP


   ___*/s/ Chris Edmunds*___
   Chris Edmunds
   Attorney for Appellees

# REPLY IN SUPPORT OF MOTION TO DISMISS APPEAL AS FRIVOLOUS OR, ALTERNATIVELY, TO SUMMARILY AFFIRM

The Archdiocese clearly takes umbrage at Appellees' highlighting the frivolous nature of its appeal. But despite being handed an additional opportunity, the *Archdiocese still cannot cite for the Court a single example of the automatic stay ever being applied to a suit without "related to" jurisdiction under 28 U.S.C. § 1334.* It does not deny that it failed to disclose *Walker*, *PFO Global*, and *Zale* to the Court in its opening brief. Instead, it merely repeats its argument from its reply brief that these cases are distinguishable because they involve non-debtors, while failing to explain why that makes any difference.[1]

**I.   *Walker*, *PFO Global*, and *Zale* all provide that, for a bankruptcy court to have any injunctive powers over an action, the action must be at least "related to" the bankruptcy under 28 U.S.C. § 1334.**

**A. *Walker* plainly states that bankruptcy courts have no "power beyond that granted in 28 U.S.C. § 1334."**

Though the procedural posture of *Walker* was undoubtedly different than this case, its holding is directly on point: "Section 157 does not give bankruptcy courts power beyond that granted in 28 U.S.C. § 1334." *Matter of Walker*, 51 F.3d 562, 569 (5th Cir. 1995). Because the third-party contribution claim in *Walker* was not "related to" the bankruptcy under Section 1334, the bankruptcy court had no

---

[1] Contrary to the Archdiocese's insinuation, the "timing" of this motion is a result of this Court requesting paper copies of the briefs on December 15, 2023. *See* Resp. Br. at n.2. Appellees are trying to mitigate any additional expenses in responding to this frivolous appeal.

3

authority to consider the automatic-stay dispute. *Id.* In other words, if the *district court* had no jurisdiction under Section 1334, then the *bankruptcy court* had no jurisdiction to do *anything at all*. *See id.* Nor is there any "implied cause of action" under 11 U.S.C. § 362 or "supplemental jurisdiction" over automatic-stay disputes. *Id.* at 570–73. If the district court lacks jurisdiction, so does the bankruptcy court. It's as simple as that.

Contrary to the Archdiocese's contention that the bankruptcy court "rejected" *Walker*, the bankruptcy court did not address *Walker* or explain why it was "unpersuaded" by this decision. Resp. Br. at 3. Instead, it simply stated that Appellees should "take [its] word for it]" that the automatic stay can apply to an unrelated lawsuit. ROA.551 ("You're just going to have to trust me on that."). The Archdiocese cannot shield itself from its own obligation to make good-faith arguments in *this* Court simply because a lower court haphazardly accepted its frivolous argument.

### B. *PFO Global* provides that a bankruptcy court must have "related to" jurisdiction to "prevent [a party] from asserting state law claims in state court."

*PFO Global* also arose in a different context than this case, but, again, the basic principle is the same: bankruptcy courts have no authority over unrelated suits. In particular, this Court explained that, for a "bankruptcy court [to have] jurisdiction to prevent [a party] from asserting state law claims in state court," the "proceeding

must be 'related to' the bankruptcy case" under Section 1334. *Matter of PFO Glob., Inc.*, 26 F.4th 245, 252 (5th Cir. 2022). Unlike *Walker* and this case, the bankruptcy court in *PFO Global <u>did</u>* have injunctive authority over the action because it "could conceivably affect [the bankruptcy estate] because successful claims against [the defendant] could reduce the amount of damages for which [the bankruptcy] estate is found liable." *Id.* at 252–53.

The Archdiocese misrepresents *PFO Global* by stating that this Court "held the parties consented to the bankruptcy court's 'related to' jurisdiction." Resp. Br. at 5. But parties cannot "consent" to jurisdiction; a court either has jurisdiction, or it doesn't. *Indus. Addition Ass'n v. Comm'r*, 323 U.S. 310, 313 (1945) ("Want of jurisdiction … may not be cured by consent of the parties."); *In re Craig's Stores of Texas, Inc.*, 247 B.R. 652, 654 (S.D. Tex. 2000), *aff'd,* 266 F.3d 388 (5th Cir. 2001) ("[P]arties cannot confer jurisdiction on bankruptcy courts by consent or waiver."). What *PFO Global* actually said was that "[a]lthough the bankruptcy court had 'related to' jurisdiction, its exercise [of that jurisdiction] was limited absent party consent," because the action was a "non core" proceeding. 26 F.4th at 253. But Appellees' suit is neither "core" nor "non-core"—it is *completely unrelated*.[2] In any event, Appellees never "agreed to the entry of the Bankruptcy Court's Order"

---

[2] *See* 28 U.S.C. § 157(b)(1), (c)(1) (providing that a "core" proceeding "arises under" the bankruptcy, while a non-core proceeding is one "that is not a core proceeding *but that is otherwise related* to a case under title 11" (emphasis added).

denying its motion for a comfort order, as the Archdiocese bizarrely suggests. Resp. Br. at 5.

### C. *Zale* provides that bankruptcy courts have no injunctive authority over a suit not "related to" a bankruptcy.

*Zale* stands for the straightforward proposition that, for a bankruptcy court to have the authority to enjoin a lawsuit, the suit must be "related to" the bankruptcy under Section 1334. *Matter of Zale Corp.*, 62 F.3d 746, 751–766 (5th Cir. 1995). The Archdiocese tries to avoid this holding by noting that *Zale*'s holding was "not in reference to the automatic stay." Resp. to Motion at 6. That is exactly right; *Zale* was considering the discretionary injunctive power under Section 105 of the Bankruptcy Code, which is **broader than the automatic stay**. *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1146 (5th Cir. 1987) ("[B]eyond the automatic stay provisions of section 362(a)(1) and (3), the bankruptcy court may affirmatively stay proceedings pursuant to its broad discretionary powers embodied in 11 U.S.C. § 105."). Because this case is not "related to" the bankruptcy, the bankruptcy court does not even have Section 105 *discretionary* powers, let alone any powers under 11 U.S.C. § 362's *automatic* provision.

Nor did the district court's remand order in this case merely hold that it lacks "jurisdiction over the *merits*" over Appellees' suit. *See* Resp. Br. at 6 (emphasis added). It held that it lacked *any* jurisdiction. ROA.456–59. A federal court may possess "related to" jurisdiction, but still lack the power to hear the "merits." *See* 28

U.S.C. § 1334(c) (requiring courts to abstain from hearing the merits of a case, even if "related to" jurisdiction exists). In such a case, the court still has the power to *enjoin* the suit under Section 105, *see Matter of Zale Corp.*, 62 F.3d at 751–766, and also potentially under 11 U.S.C. § 362's automatic provision, if that provision applies. But under no circumstance can 11 U.S.C. § 362 apply if the suit is not "related to" the bankruptcy under § 1334(b). *See Matter of PFO Glob., Inc.*, 26 F.4th at 252; *see also Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 994–96 (5th Cir. 1985) (holding that "related to" jurisdiction is broader than the scope of the automatic stay).

### D. That these cases dealt with non-debtors is immaterial; the question is whether an action affects the estate, and Appellees' lawsuit does not.

Once again, the Archdiocese offers one, and only one, basis to distinguish these binding cases, namely, that they involved non-debtors. But not once does it explain why that distinction matters. After all, the Archdiocese concedes that even a suit between *non*-debtors may be automatically stayed if the suit conceivably affects the estate. *See Matter of PFO Glob., Inc.*, 26 F.4th at 252. The key question is not who the parties to the action are, but whether the action will affect estate assets. The Archdiocese concedes that Appellees' suit will not affect the estate, and that concession is dispositive. *See In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999); *Matter of PFO Global, Inc.*, 26 F.4th at 252–53; *Matter of Walker*, 51 F.3d at 569–

73. It would make no sense for the automatic stay to apply to a suit that everyone agrees does not affect estate assets.

## II.     Sanctions are warranted under Rule 38.

The Archdiocese does not deny that it failed to disclose these adverse authorities to this Court. *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 703 (7th Cir. 2010) ("Failing to cite adverse controlling authority makes an argument frivolous."). And its last-ditch attempt to distinguish these cases is futile, which is precisely why it ignored these cases in the first place.

The Archdiocese claims that its appeal cannot be frivolous because its "arguments were successful in Bankruptcy Court." Resp. Br. at 8. But the test for frivolity is an "objective" one. *Coghlan v. Starkey*, 852 F.2d 806, 809 (5th Cir. 1988) (noting that "[i]t is human nature to crave vindication of a passionately held position even if the position lacks an *objectively reasonable* basis in the law") (emphasis added) (quoting *Dreis & Krump Mfg. Co. v. Int'l Ass'n of Machinists*, 802 F.2d 247, 255–56 (7th Cir.1986)).  The fact that the bankruptcy court *also* shared this objectively unreasonable view of the law does not insulate the Archdiocese from Rule 38 liability.  Moreover, the bankruptcy court failed to conduct any analysis at all, insisting that Appellees' "take [its] word for it" that the automatic stay can apply to an unrelated lawsuit.  An Appellant has an independent obligation to determine

8

that its arguments have merit, and it is not reasonable to rely on such a perfunctory ruling to satisfy this obligation.[3]

The Archdiocese also argues that this Court should ignore its frivolous argument because the "appeal involves five issues." Resp. Br. at 7. But "each and every argument in the appeal" need not be frivolous to justify Rule 38 sanctions. *Macklin v. City of New Orleans*, 300 F.3d 552, 554 (5th Cir. 2002). In any event, the other grounds raised by the Archdiocese's are equally frivolous. For example, the Archdiocese argues that Appellees do not have "bankruptcy standing" to challenge the automatic stay, even though no court has *ever* held that "bankruptcy standing" applies to stay-relief motions. And it argues that the bankruptcy court did not "definitively" resolve the applicability of the automatic stay, despite the court's unequivocal legal conclusion that the automatic stay "absolutely" applies. ROA.577; *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020).

## III. Sanctions under 28 U.S.C. § 1927 are warranted.

As noted, "28 U.S.C. § 1927 is used in tandem with" FRAP 11 to hold to counsel "personally" liable for vexatious conduct, as attorneys have an ethical obligation "to limit litigation to contentions well grounded in fact and ... warranted by existing law." *Coghlan*, 852 F.2d at 818 (internal quotation marks omitted). The

---

[3] The Archdiocese is also not "defending a favorable ruling," as it suggests. *See* Resp. Br. at 8. It is appealing an unfavorable one.

Archdiocese's counsel are bankruptcy specialists—a fact they do not deny. *See id.* at n.14. The automatic stay has as its sole purpose to conserve estate property. 11 U.S.C. § 362. For bankruptcy specialists to argue that a suit that they *concede* does not affect estate property is subject to the automatic stay is the epitome of frivolity. *See id.*

Indeed, this frivolous appeal is a perfect example of how this firm has racked up so much in fees with so little to show for it. Counsel for the Archdiocese bristle at the Court being apprised of undisputable facts—namely, that they have been handsomely rewarded for a bankruptcy that is approaching the four-year mark without any hint of a confirmation plan on the horizon, while the creditors are left holding the bag. But the examples of their vexatious conduct are well documented. They have been "admonish[ed]" by the bankruptcy court "for failing to disclose information related to a property sale."[4] And they have failed to disclose key information to their insurance companies, leading the bankruptcy court to chide them: "If you're going to ask the guy to write a check, he needs to be at the table."[5] In fact, they apparently told their client that the bankruptcy would only cost around

---

[4] Stephanie Riegel, *Archdiocese of New Orleans, abuse survivors still far from settlement; 'A knife fight since day one'*, The Times Picayune (Nov. 17, 2023), https://www.nola.com/news/business/archdiocese-of-new-orleans-far-from-bankruptcy-settlement/article_c690dd4e-84d5-11ee-bbcf-3b15663400aa.html

[5] Aubry Killion, *New Orleans Archdiocese bankruptcy case drags into 2024, sex abuse survivors ready for closure*, WDSU (Dec. 21, 2023), https://www.wdsu.com/article/new-orleans-archdiocese-bankruptcy-case-drags-into-2024-sex-abuse-survivors-ready-for-closure/46204613#

$7 million, but the costs are now over four times as high, with their firm pocketing nearly half of that.[6] Given the vexatious nature of this appeal, and the attendant circumstances, this Court would be well within its discretion to impose the sanctions against counsel under 28 U.S.C. § 1927.[7]

## IV. Summary disposition is not limited to instances where a party "concedes" that its argument is foreclosed by precedent.

Citing an unpublished decision, the Archdiocese argues that summary affirmance is inappropriate because it "does not concede that any of its arguments are foreclosed" by precedent. Resp. Br. at 10. That is not the test for summary disposition. The question is whether "the position of one of the parties is clearly right as a matter of law so that there can be no substantial question as to the outcome of the case, or where, as is more frequently the case, the appeal is frivolous." *Groendyke Transp., Inc. v. Davis*, 406 F.2d 1158, 1162 (5th Cir. 1969). For example, this Court summarily disposed of a petition for review in *Ondo v. Barr*, and the petitioner in that case did not "concede" that his claim was foreclosed by

---

[6] Stephanie Riegel, *Aymond: Catholic parishes, schools must help shoulder cost of archdiocese sex abuse claim*, The Times Picayune (Sep. 8, 2023), https://www.nola.com/news/business/aymond-parishes-schools-to-help-pay-off-sex-abuse-claims/article_f82a792e-4e8d-11ee-a21b-0b941c050888.html

[7] Counsel claim that their "fees have been closely analyzed for reasonableness" by the bankruptcy court. Resp. Br. at 9. But the proof is in the pudding: tens of thousands of billing entries have been approved by the bankruptcy court in unreasoned, 2-page orders. *See In re Archdiocese*, No. 20-10846, R. Docs. 682; 826; 1115; 1197; 1355; 1741; 1987; 2221; 2417; 2748. The fact that there has been no objection from the attorneys for the creditor committees—whose millions of dollars in fees are *also* being summarily approved without any meaningful scrutiny—proves nothing, other than a willingness to preserve the status of quo of (i.e., millions being transferred to attorneys while creditors get nothing).

11

precedent. *See* 826 F. App'x 348, 352 (5th Cir. 2020). Nor did the defendant in *United States v. Olvera* "concede" that his argument was foreclosed. *See* No. 22-40094, 2023 WL 3254991, at *1 (5th Cir. May 4, 2023). Put simply, if an argument is foreclosed by precedent, summary disposition is appropriate, whether or not the party concedes that fact.

## CONCLUSION

For the reasons given above, this Court should dismiss the appeal as frivolous and impose sanctions. Alternatively, it should summarily affirm the district court.

Respectfully submitted,

January 5, 2024

　　/s/ *Chris Edmunds*

Chris Edmunds, LBSA: 37670
Counsel for Appellees
4937 Hearst St., Suite 2F
Metairie LA 70001
(504) 314-0034
chrisedmundslaw@gmail.com

12

# **CERTIFICATE OF COMPLIANCE**

Undersigned counsel certifies as follows:

This brief complies with the type-volume limitation in Rule 27(d)(2)(C) of the Federal Rules of Appellate Procedure, because, excluding the parts exempted under Fed. R. App. 32(f) and 5th Cir. R. 32.2, this brief contains 2,475.

This brief complies with the typeface requirements of Rule 32(a)(5)(A) and Rule 32(a)(6) of the Federal Rules of Appellate Procedure, because it has been prepared in a proportionally spaced typeface in Microsoft Word (version 16.51) in Times New Roman. The text is prepared in 14-point font, and the footnotes are prepared in 12-point font.


___*/s/ Chris Edmunds*_____
Chris Edmunds
Attorney for Appellees